PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**June 5, 2008**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re: | Case No. 07-44351 |
| PATRICK DWAINE TALLEY, | **MEMORANDUM DECISION** |
| Debtor. | |

THIS MATTER came before the Court on May 15, 2008, on the United States Trustee's (Trustee) Motion to Dismiss Pursuant to § 707(b). A response was filed by Patrick Talley (Debtor). At the conclusion of the hearing, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2).

**I**

**FINDINGS OF FACT**

The Debtor filed a voluntary Chapter 7 petition on December 17, 2007. He is single and resides in a mobile home on 38.5 acres of real property in Eatonville, Washington (Property), valued on bankruptcy Schedule A at $305,000. The Debtor works for the City of Kent as a building inspector, where he has been employed for over ten years. The Debtor is recently divorced, does not pay alimony and has no dependents.

MEMORANDUM DECISION - 1

The Debtor's annualized current monthly income is $69,258. This is above the $46,700 applicable median income for a household of one. Schedule I lists monthly gross income of $5,513. Schedule J lists total monthly expenses of $4,676, of which $3,130 is budgeted for the two mortgages on the property ($2,126 for the 1st and $1,004 for the 2nd). The mortgage expense accounts for approximately 67% of the total budget. The Debtor passed the means test, primarily based on his high monthly mortgage payments.

The Debtor's debts are consumer debts. He has $291,056 in secured debt, consisting of the two mortgages on the Property, and unsecured debt of $72,749.

Using the Debtor's figures, the Debtor has negative disposable income of $995 per month. The Trustee recalculated the Debtor's monthly gross income based on a November, 2007, pay advice at $5,714.[1] Using a revised net income of $3,836 and substituting the Internal Revenue Service Housing and Utilities Standard (IRS Standard) of $974 for the mortgage expense, the Trustee recalculated the Debtor's disposable income at $1,317. Using the Trustee's figures, the Debtor could pay $79,020 into a Chapter 13 plan over 60 months, which is almost sufficient to pay 100% of the $72,749 in unsecured debt, including attorney fees and Chapter 13 expenses.

**II**

**CONCLUSIONS OF LAW**

The Trustee brings its motion to dismiss under 11 U.S.C. § 707(b)(1). This section provides that a court may dismiss a Chapter 7 case filed by a debtor whose debts are primarily consumer debts if it finds that the granting of relief would be "an abuse." 11 U.S.C. § 707(b) provides two alternative standards for determining whether "abuse" exists. Under 11

---

[1] The 2007 W-2 attached as an exhibit to Patrick Talley's declaration shows 2007 income of $5,600.78 per month. No pay advices for 2007 have been provided.

MEMORANDUM DECISION - 2

U.S.C. § 707(b)(2) a presumption of abuse arises where an ability to pay threshold is exceeded under a means test formula. The presumption does not arise in this case. When the presumption does not arise or is rebutted, 11 U.S.C. § 707(b)(3) sets forth two alternate considerations for assessing abuse. The Court is to consider whether the petition was filed in bad faith (§ 707(b)(3)(A)) or if abuse exists based on the totality of the circumstances (§ 707(b)(3)(B)). No allegations of bad faith have been presented. Accordingly, the Court will evaluate the Trustee's motion to dismiss based solely on the totality of the circumstances.

No guidance is provided to the Court in 11 U.S.C. § 707(b)(3)(B) as to the factors to consider in evaluating the totality of the circumstances other than they are to be considered as they relate to the debtor's "financial situation." However, courts that have conducted this analysis have recognized that 11 U.S.C. § 707(b)(3) is "best understood as a codification of pre-BAPCPA case law, and as such, pre-BAPCPA case law is still applicable when determining whether to dismiss a case for abuse." In re Stewart, 383 B.R. 429, 432 (Bankr. N.D. Ohio 2008).

Factors that the Ninth Circuit considered in evaluating the totality of the circumstances under former 11 U.S.C. § 707(b) include:

(1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;
(2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;
(3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;
(4) Whether the debtor's proposed family budget is excessive or extravagant;
(5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and
(6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

In re Price, 353 F.3d 1135, 1139-40 (9th Cir. 2004).

MEMORANDUM DECISION - 3

The parties agree that the Debtor can satisfy a majority of the Price factors in this case. There is no evidence that he engaged in eve-of-bankruptcy purchases or that he obtained cash advancements or consumer goods on credit. Although there is no evidence that the Debtor's petition was filed as a consequence of illness or disability, he was recently divorced which had a negative impact on his income. Other than the mortgage expenses, the Trustee acknowledges that the Debtor's budget is fairly minimal.

The Debtor, however, also seeks to retain 38.5 acres of real property, in which there is minimal or no equity. The mortgage payments equal 67 percent of his budgeted expenses and over 80 percent of his net income. The IRS Standard for mortgage/rental payments for Pierce County is $974. Thus, the Debtor's housing expense is over three times higher than the IRS Standard.

The Debtor argues that the Court should not consider the IRS Standard in evaluating this case for abuse. Although IRS Standards are not directly applicable to 11 U.S.C. § 707(b)(3), courts have recognized that they are helpful in determining the reasonableness of a debtor's expenses. See, e.g., In re Gonzalez, 378 B.R. 168, 175 (Bankr. N.D. Ohio 2007) (court used expense figures provided in the means test as a "pole for guidance" in determining the reasonableness of expenses under 11 U.S.C. § 707(b)(3)).

The Debtor also argues that the Court should not examine the reasonableness of any of his expenses because he passed the means test of 11 U.S.C. § 707(b)(2). The Debtor relies on In re Walker, 381 B.R. 620 (Bankr. M.D. Pa. 2008), which held that under the cannon of negative implication, disposable income that existed under the debtor's Schedules I and J should not be considered in evaluating whether a case should be dismissed, where there was no disposable income under the means test. Walker, 381 B.R. at 624.

MEMORANDUM DECISION - 4

The Court notes that in Walker there was no allegation that the Schedule J expenses were excessive. In addition, despite its previous comments that a court should not reexamine scheduled income and expenses if a debtor satisfies the means test, the bankruptcy court did consider this factor in evaluating whether abuse existed under the totality of the circumstances. Walker, 381 B.R. at 625 ("The Court finds that the Debtor is living within her means and does not find any of the scheduled expenditures to be excessive.").

The Walker case is not binding on this Court. Furthermore, even assuming arguendo that its holding is as broad as the Debtor suggests, the Court finds the Walker analysis unpersuasive and contrary to a majority of bankruptcy court decisions. See, e.g., In re Pak, 343 B.R. 239, 243-44 (Bankr. N.D. Cal. 2006) (holding that in a hypothetical chapter 13 a debtor's ability to pay debts is to be considered as part of the totality of circumstances for an equal to or below-median-income debtor); In re Kaminski, 2008 WL 1733389, at *3-4 (Bankr. N.D. Ohio April 14, 2008) (finding that the court is not required to accept a debtor's figures when assessing ability to pay, but may make "downward adjustments in a debtor's expenses where necessary"). Accordingly, the Court concludes that it is not precluded from examining the reasonableness of the Debtor's mortgage expenses or from considering the applicable IRS Standard in this case.

Although the Debtor has proposed a fairly minimal budget for all items except housing, the retention of the Property comes at the expense of his unsecured creditors. Bankruptcy is "meant to provide a debtor a fresh-start, but not a head start." In re Wadsworth, 383 B.R. 330, 334 (Bankr. N.D. Ohio 2007). "Thus, when seeking bankruptcy relief, debtors may be expected to do some belt tightening, including, where necessary, foregoing the reaffirmation of those secured debts which are not reasonably necessary for the maintenance and support

MEMORANDUM DECISION - 5

of the debtor and his family." Wadsworth, 383 B.R. at 334. Further, the 2005 amendments to the bankruptcy code lowered the threshold in 11 U.S.C. § 707(b) cases from "substantial abuse" to mere "abuse."

"[A]ll debtors are entitled to expense against their income those costs associated with maintaining adequate shelter." Kaminski, 2008 WL 1733389, at *4 (finding a housing expense of $1,856.12 excessive). In determining whether a housing expense is reasonable, a court may consider such factors as a "debtor's family size, income level, location and any special needs of the debtor." Kaminski, 2008 WL 1733389, at *4. The Debtor's mortgage expense in this case is $3,130. The mortgage payments comprise over 80 percent of his net income and 67 percent of his budgeted expenses. He is single and has asserted as his sole special circumstance a recent dissolution of marriage. While a dissolution of marriage may constitute special circumstances in some cases, in the instant case it is not concluded to be sufficient to overcome the payment of an expenditure more than three times the IRS Standard. He has also failed to demonstrate any unique circumstances warranting the retention of this specific property. In fact, the Property was apparently purchased with the intent of creating a Christmas tree farm on it. The Debtor, however, has recently learned from the Department of Natural Resources that the Property cannot be put to that use. Likewise, the Debtor has failed to demonstrate that the location of the Property weighs in favor of its retention. The Property is located in Eatonville, requiring the Debtor to commute 106 miles to his job in Kent daily.

Of equal importance, the Debtor's stated budget has a monthly shortfall of $995. The Debtor has failed to provide any explanation as to where the income will come in the future to meet this shortfall or how he has been able to remain current on the mortgage payments on

MEMORANDUM DECISION - 6

the budget provided. The Debtor has been employed in the same position for ten years and there is no evidence that his income is going to significantly increase in the near future. "Bankruptcy is meant to afford an honest debtor a fresh-start, whereby the debtor is freed from preexisting financial burdens, and is not meant to be used as a means by which a debtor can perpetuate bad financial decisions." Kaminski, 2008 WL 1733389, at *4. Based on the fact that the Debtor is a single person, with no dependents, residing on over 38 acres, in which he has little equity, that requires a monthly expense three times higher than the IRS Standard, accounts for over 80% of his net income, and results in a monthly shortfall of $995, the Court concludes that the Debtor's housing expense is unreasonable.

The Court's ruling in this case should not be interpreted to mean that this Court will find abuse whenever a debtor has expenses that exceed the IRS Standards. For example, if a large family has an equivalent housing expense and sufficient income to pay expenses, there may very well be no finding of abuse. Housing is only one of the factors the Court considered in reaching its decision in the instant case. Equally important is the undisputed fact that the Debtor's expenses greatly exceed his scheduled income if he continues to pay the $3,130 mortgage expense per month.

In evaluating the totality of the circumstances of this case, the Court concludes that under 11 U.S.C. § 707(b), it would be an abuse to grant the Debtor relief under Chapter 7. The Debtor's case will be dismissed on June 16, 2008, unless prior to that date, the Debtor has filed a motion to convert from Chapter 7 to Chapter 13.

DATED: June 5, 2008

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 7